Receipt Number

*570097*

*46*

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TOOLING, MANUFACTURING &
TECHNOLOGIES ASSOCIATION
a Michigan non-profit trade association,

              Plaintiff,

v.

THE HARTFORD FIRE INSURANCE
COMPANY, a Connecticut insurance company,

              Defendant.

Case: 4:08-cv-11812
Judge: Gadola, Paul V
MJ: Whalen, R. Steven
Filed: 04-29-2008 At 02:08 PM
REM TOOLING, MANUFACTURING & TECHNOLOGIES
ASSOC V. HARTFORD (TAM)

_____

## NOTICE OF REMOVAL

Defendant The Hartford Fire Insurance Company ("Hartford") gives notice that it is removing this case to the United States District Court for the Eastern District of Michigan, Southern Division, on the grounds set forth below.

1.      On April 4, 2008, Tooling, Manufacturing & Technologies Association ("TMTA") filed this action in Oakland County Circuit Court, State of Michigan, entitled, *Tooling, Manufacturing & Technologies Association, Plaintiff v. The Hartford Fire Insurance Company, Defendant,* Case No. 08-090595-CK, Honorable Mark A. Goldsmith.

2.      TMTA personally served a copy of the Summons and Complaint on Hartford's resident agent, the Corporation Service Company, on April 10, 2008. To date, there have been no other pleadings or documents filed in this action.

3.      This Notice of Removal, filed on April 28, 2008, is "within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting

forth the claim for relief upon which such action or proceeding is based" is therefore timely filed under 28 U.S.C. § 1446(b).

**Jurisdiction**

4.     This is a civil action within this Court's original jurisdiction pursuant to 28 U.S.C. § 1332 because it is between citizens of different states and involves an amount in controversy that TMTA alleges to be in excess of $75,000, exclusive of interest and costs. See, Complaint ¶ 50. This action may be removed to this Court by Hartford pursuant to 28 U.S.C. § 1441.

5.     TMTA is a Michigan non-profit trade association incorporated under the laws of the State of Michigan with its principal place of business in the State of Michigan. Hartford is informed and believes that TMTA was at the time of filing the Complaint in this action and still is a citizen of the State of Michigan pursuant to 28 U.S.C. § 1332(c)(1).

6.     Hartford is an insurance company incorporated under the laws of the State of Connecticut with its principal place of business in the State of Connecticut. Hartford was at the time of filing the Complaint in this action and still is a citizen of the State of Connecticut pursuant to 28 U.S.C. § 1332(c)(1).

7.     Since TMTA is a citizen of Michigan, and Hartford is a citizen of Connecticut, there is complete diversity between TMTA and Hartford as required by 28 U.S.C. §§ 1332(a)(1) and 28 U.S.C. § 1441(b).

8.     For purposes of 28 U.S.C. § 1332(a) and § 1441(b), the amount in controversy in this action exceeds the sum or value of $75,000, exclusive of interest and costs.

9.     This action may be removed by Hartford pursuant to 28 U.S.C. § 1441. Removal to the United States District Court for the Eastern District of Michigan, Southern Division, is proper because this District embraces Oakland County.

10.     A copy of the Notice of Removal is being filed with the Clerk of the Circuit Court for Oakland County, Michigan and is being served on all counsel of record.  See, 28 U.S.C. § 1446(a) and (d).

11.     Attached to this Notice of Removal as Exhibit A are copies of all process, pleadings, and orders known to Hartford, which consists of the Summons and Complaint.

Respectfully submitted,

**KERR, RUSSELL AND WEBER, PLC**

By: _____
James R. Case  (P31583)
Jason C. Yert  (P67144)
Attorneys for Hartford Fire Insurance Company
500 Woodward Avenue
Detroit, Michigan 48226

Dated:  April 28, 2008

Approved, SCAO

| | Original – Court<br>1st copy – Defendant | 2nd copy – Plaintiff<br>3rd copy – Return |
|---|---|---|

| STATE OF MICHIGAN<br>JUDICIAL DISTRICT<br>6th JUDICIAL CIRCUIT<br>COUNTY PROBATE | SUMMONS AND COMPLAINT | OAKLAND<br>COUNTY 08-090595-CK<br>CK<br>one no. |
|---|---|---|

JUDGE MARK A. GOLDSMITH
TOOLING MANUF v HARTFORD FIRE

Court address
1200 N. Telegraph Road, Dept. 404, Pontiac, MI 48341

| Plaintiff name(s), address(es), and telephone no(s). | | Defendant name(s), address(es), and telephone no(s). |
|---|---|---|
| Tooling Manufacturing & Technologies Association<br>PO Box 9151<br>Farmington Hills, MI 48333-9151 | v | The Hartford Fire Insurance Company<br><br>c/o CSC-Lawyers Incorporating Service Co<br>601 Abbott Road<br>East Lansing MI 48823 |

| Plaintiff attorney, bar no., address, and telephone no. |
|---|
| Elaine A. Parson (P34493)<br>Krista A. Jackson (P66303)<br>300 East Long Lake Road,, Suite 200<br>Bloomfield Hills, MI 48304<br>(248) 540-2300 |

**SUMMONS** NOTICE TO THE DEFENDANT: In the name of the people of the State of Michigan you are notified:
1. You are being sued.
2. YOU HAVE 21 DAYS after receiving this summons to file a written answer with the court and serve a copy on the other party or take other lawful action with the court (28 days if you were served by mail or you were served outside this state). MCR 2.111(C)
3. If you do not answer or take other action within the time allowed, judgment may be entered against you for the relief demanded in the complaint.

| Issued<br>APR 04 2008 | This summons expires<br>JUL 07 2008 | Court clerk<br>RUTH JOHNSON |
|---|---|---|

*This summons is invalid unless served on or before its expiration date.
This document must be sealed by the seal of the court.

**COMPLAINT** *Instruction: The following is information that is required to be in the caption of every complaint and is to be completed by the plaintiff. Actual allegations and the claim for relief must be stated on additional complaint pages and attached to this form.*

Family Division Cases
☐ There is no other pending or resolved action within the jurisdiction of the family division of circuit court involving the family or family members of the parties.
☐ An action within the jurisdiction of the family division of the circuit court involving the family or family members of the parties has been previously filed in_____Court.
The action ☐ remains   ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| | | |

General Civil Cases
☐ There is no other pending or resolved civil action arising out of the same transaction or occurrence as alleged in the complaint.
☑ A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in Oakland County Circuit Court_____Court.
The action ☑ remains   ☐ is no longer   pending. The docket number and the judge assigned to the action are:

| Docket no. | Judge | Bar no. |
|---|---|---|
| 2007-081120-CZ | Mark A. Goldsmith | P32324 |

**VENUE**

| Plaintiff(s) residence (include city, township, or village) | Defendant(s) residence (include city, township, or village) |
|---|---|
| City of Farmington Hills, Oakland County, Michigan | City of Farmington Hills, Oakland County, Michigan |

| Place where action arose or business conducted |
|---|
| City of Farmington Hills, Oakland County, Michigan |

04/03/2008
Date

Signature of attorney/plaintiff

If you require special accommodations to use the court because of a disability or if you require a foreign language interpreter to help you to fully participate in court proceedings, please contact the court immediately to make arrangements.

MC 01 (3/08) SUMMONS AND COMPLAINT     MCR 2.102(B)(11), MCR 2.104, MCR 2.105, MCR 2.107, MCR 2.113(C)(2)(a), (b), MCR 3.206(A)

PROOF OF SERVICE

SUMMONS AND COMPLAINT
Case No.

**TO PROCESS SERVER:** You are to serve the summons and complaint not later than 91 days from the date of filing or the date of expiration on the order for second summons. You must make and file your return with the court clerk. If you are unable to complete service you must return this original and all copies to the court clerk.

CERTIFICATE / AFFIDAVIT OF SERVICE / NONSERVICE

| ☐ OFFICER CERTIFICATE | OR | ☐ AFFIDAVIT OF PROCESS SERVER |
|---|---|---|
| I certify that I am a sheriff, deputy sheriff, bailiff, appointed court officer, or attorney for a party [MCR 2.104(A)(2)], and that:  (notarization not required) | | Being first duly sworn, I state that I am a legally competent adult who is not a party or an officer of a corporate party, and that:  (notarization required) |

☐ I served personally a copy of the summons and complaint,
☐ I served by registered or certified mail (copy of return receipt attached) a copy of the summons and complaint,

together with _____
       List all documents served with the Summons and Complaint

_____ on the defendant(s):

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

☐ I have personally attempted to serve the summons and complaint, together with any attachments on the following defendant(s) and have been unable to complete service.

| Defendant's name | Complete address(es) of service | Day, date, time |
|---|---|---|
| | | |
| | | |

| Service fee | Miles traveled | Mileage fee | Total fee | Signature |
|---|---|---|---|---|
| $ | | $ | $ | |
| | | | | Title |

Subscribed and sworn to before me on _____, _____ County, Michigan.
                                   Date

My commission expires: _____ Signature: _____
                        Date                          Deputy court clerk/Notary public
Notary public, State of Michigan, County of 04/03/2008

ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of the summons and complaint, together with _____
                                                 Attachments

_____ on _____
                               Day, date, time
                                 on behalf of _____.
Signature

LAW DEPARTMENT

APR 14 2008

STATE OF MICHIGAN

Litgation Group

IN THE OAKLAND COUNTY CIRCUIT COURT

08-090595-CK

JUDGE MARK A. GOLDSMITH
TOOLING MANUF  v  HARTFORD FIRE
2008-                          -CK

TOOLING, MANUFACTURING &
TECHNOLOGIES ASSOCIATION,

    Plaintiffs,

v.

THE HARTFORD FIRE INSURANCE
COMPANY,

    Defendant.

BY: DEPUTY COUNTY CLERK

2008 APR -14  P 3: 05

RECEIVED FOR FILING
OAKLAND COUNTY CLERK

STROBL & SHARP, P.C.
ELAINE A. PARSON (P34493)
KRISTA A. JACKSON (P66303)
Attorneys for Plaintiffs
300 East Long Lake Road, Suite 200
Bloomfield Hills, MI 48304-2376
(248) 540-2300

A civil action between these parties
or other parties arising out of the
transaction or occurrence alleged in
the complaint has been previously
filed in Oakland County Circuit Court.
The action remains pending.   The
docket and the judge assigned to the
action are: Docket No. 07-081120-CZ,
Judge Mark A. Goldsmith.

## COMPLAINT AND JURY DEMAND

PLAINTIFF Tooling, Manufacturing & Technologies Association, by and through

its attorneys Strobl & Sharp, P.C., states as follows for its Complaint against

Defendant Hartford Fire Insurance Company.

## JURISDICTION AND VENUE

1.      Plaintiff, Tooling, Manufacturing & Technologies Association ("TMTA"), is a Michigan non-profit trade association, with its principal place of business in Oakland County, Michigan, and which conducts business in Oakland County, Michigan. TMTA was formerly known as the Michigan Tooling Association ("MTA").

2.      Defendant Hartford Fire Insurance Company (the "Hartford") is a Connecticut insurance company with its principal place of business in Hartford, Connecticut.

3.      At all times relevant hereto, the Hartford provided TMTA with insurance coverage in Oakland County, Michigan, pursuant to that certain CrimeShield Policy for Mercantile Entities, Policy No. 353DDCM1571 (the "Policy"). A copy of the Policy is appended hereto as Exhibit A.

4.      The Policy is dated September 16, 2003 and provides coverage for, among other things, employee theft in the amount of Three Hundred Thousand Dollars ($300,000.00).

5.      Plaintiffs seek damages in excess of $25,000 and this matter is otherwise within the Court's jurisdiction.

6.      Venue is proper in this Court.

## FACTUAL ALLEGATIONS

7.      Plaintiff hereby incorporates by reference and realleges Paragraphs 1 through 6 as through fully set forth herein.

8.      Under the Policy, the Hartford has insured MTA for $300,000 of loss

2

based on employee theft.

9.     All premiums were paid and current, and the Policy was in full force and effect from September 16, 2003 to the present.

10.    Pursuant to Paragraph I of the Policy, the Hartford is required to "pay for loss which [TMTA] sustain[s] resulting directly from acts committed or events occurring at any time and discovered by [TMTA] during the Policy Period shown in the Declarations or during the period of time provided in General Condition L., EXTENDED PERIOD TO DISCOVER LOSS."

11.    As of the date this Complaint was filed, the Policy is still in effect and has not been cancelled or terminated.

12.    Section II.  Insurance Agreements, Paragraph A. of the Policy, Insuring Agreement I, Employee Theft, provides:

> we will pay for loss or damage to "money", "securities" and "other property" which results directly from "theft" by an "employee", whether or not identifiable, while acting alone or in collusion with other persons.

13.    The Policy also provides coverage for forgery or alteration of, inter alia:

> orders or directions to pay a sum certain in money, theft, disappearance and destruction of property, both inside or outside of the insured's premises, robbery and burglary, computer and funds transfer fraud, and loss from good faith acceptance of money orders and counterfeit currency.

14.    "Theft" is defined by the Policy as the "unlawful taking of 'money,' 'securities' or 'other property' to the deprivation of the Insured."

15.    Mark Tyler ("Tyler"), at all relevant times, was an "employee" or recently was an employee of TMTA as defined by the Policy.

16.    Tyler is, and at all relevant times has been, a licensed insurance agent

STROBL & SHARP, P.C.  ATTORNEYS & COUNSELORS   300 East Long Lake Road   Suite 200   Bloomfield Hills   Michigan   48304-2376   (248) 540-2300

3

holding appointments with various insurance companies to sell accident and health, life, and property & casualty insurance.

17. From about September 1, 2000 until at least February 23, 2007, Tyler was employed by TMTA to sell insurance to TMTA members and to act as the General Manager of the MTA Insurance Agency, LLC, now known as the TMTA Insurance Agency, LLC (the "Agency").

18. TMTA is the sole member of the Agency, manages the Agency through TMTA's employees, and formed the Agency in order to maintain and further benefit TMTA's insurance business, which is conducted for the benefit of TMTA's members.

19. In the course of his employment by TMTA, Tyler acted as General Manager of the Agency, and assumed full responsibility for TMTA's insurance business.

20. In the course of Tyler's employment, Tyler sold life, health, disability and accident insurance, and possibly P&C insurance (collectively the "Insurance") to TMTA's members: The insurers paid commissions and bonuses to TMTA resulting from Insurance sales to TMTA members.

21. TMTA paid Tyler a salary, and bonuses based upon the amount of Insurance commissions Tyler brought to TMTA. TMTA also provided to Tyler additional benefits such as vacation pay and 401(k) eligibility. Each year TMTA issued its W-2 forms reflecting compensation TMTA paid to Tyler.

22. All commissions and bonuses paid as a result of Insurance sales by Tyler to TMTA members were to be paid to TMTA: As the employee of TMTA, Tyler had a duty to disclose to TMTA all commissions and bonus payments which resulted,

4

or could have resulted, from sales of the Insurance, and to ensure that all commissions generated as a result of his sales of Insurance were paid to TMTA.

23. Without the knowledge of TMTA, Tyler incorporated and/or maintained several separate insurance entities and/or agencies while still employed by TMTA. Specifically:

    a.    On February 19, 1993, Tyler incorporated Allied Risk, Inc. (On June 12, 1995, Allied Risk, Inc. changed its name to Team Marketing Group, Inc.)

    b.    Team Marketing Group, Inc. registered the assumed names of Allied Risk, Inc., Team Benefits Group, Inc. and Tyler Construction, Inc.

    c.    On September 18, 2006, Tyler incorporated Mark Tyler & Associates, Inc.

24. While an employee of TMTA, and without TMTA's knowledge or consent, Tyler serviced and sold Insurance to TMTA members (and possibly others) and caused all or portions of the commissions and bonuses that should have gone to TMTA to be paid to himself and/or his entities.

25. Tyler resigned on February 23, 2007 and when Tyler left the TMTA premises, he took all computer stored, and most hard copy, insurance information with him.

26. Thus, on February 27, 2007, TMTA filed suit against Tyler in Oakland County Circuit Court (Case No. 07-081120- CZ) ("Tyler Litigation"), focusing its case on the theft of insurance records and trade secrets.

27. During the early part of the discovery phase of the Tyler Litigation, TMTA subpoenaed records concerning Tyler's activities from the insurers who had appointed TMTA, including Blue Cross/Blue Shield.

STROBL & SHARP, P.C. ATTORNEYS & COUNSELORS 300 East Long Lake Road Suite 200 Bloomfield Hills Michigan 48304-2376 (248) 540 2300

5

28.     The subpoenaed records which were produced included references to commissions being "reassigned" to Tyler from TMTA.

29.     At that time, TMTA had no knowledge of any commissions being "reassigned" to Tyler.

30.     After further discovery, TMTA identified significant commissions paid directly to Tyler and Tyler entities resulting from Tyler's sales of insurance to TMTA members.

31.     On July 23, 2007, TMTA filed its Proof of Loss with the Hartford, referencing the converted commissions and bonuses.

32.     After specific discovery of the amounts wrongfully taken by Tyler and his entities, TMTA amended its complaint to add causes of action for Conversion and Fraud on September 9, 2007.

33.     On September 25, 2007, TMTA provided the Hartford with follow-up information, in response to a request by the Hartford.

34.     TMTA has cooperated fully in the Hartford's investigation into this matter, including notification of local police authorities of Tyler's actions.

35.     On November 6, 2007, TMTA demanded that the Hartford make a determination as to whether it would cover TMTA's losses with respect to the theft by Tyler.

36.     To date, the Hartford has not made a determination regarding coverage.

## COUNT I
## DECLARATORY JUDGMENT

37.     Plaintiff hereby incorporates by reference and realleges Paragraphs 1 through 36 as through fully set forth herein.

6

38. As a result of entering into the Policy with TMTA, the Hartford owed TMTA the duties to act fairly and reasonably in investigating TMTA's claim, to act in good faith and to timely pay TMTA's claim.

39. The Hartford, though its agents, representatives, and employees, failed to act fairly and reasonably in investigating TMTA's claims, failed to act in good faith and failed to timely pay TMTA's claim.

40. The Hartford's wrongful conduct includes the Hartford's failure to timely determine that coverage was appropriate, to timely involve itself in the ongoing settlement discussions between TMTA and Tyler and his entities, and to timely pay TMTA's claim.

41. The Hartford has also engaged in unfair or deceptive actions or practices in the business of insurance, by failing to comply with MCL § 500.2026 and 2254 by:

    a. Failing to acknowledge promptly or to act reasonably and promptly upon communications with respect to claims arising under insurance policies;

    b. Failing to adopt or implement reasonable standards for prompt investigation of claims arising under insurance policies; and

    c. Failing to affirm or deny coverage within a reasonable time after proof of loss statements have been completed.

    d. Failing to timely, finally pass upon TMTA's claim submitted to it within 6 months from submission of TMTA's proof of loss.

42. These actions by the Hartford constitute a breach of TMTA's insurance contract with the Hartford.

43. As a direct and proximate result of this breach of contract, TMTA has been damaged.

7

WHEREFORE, TMTA respectfully asks that this court enter an Order declaring that Defendant Hartford Fire Insurance Company must provide coverage and payment to TMTA under the Policy and award all other relief deemed just and equitable.

## COUNT II
## BREACH OF CONTRACT

44.     Plaintiff hereby incorporates by reference and realleges Paragraphs 1 through 43 as through fully set forth herein.

45.     In addition, the Hartford's actions and omissions and failure to act, as described above, constitutes a breach of its duties under the Policy, a breach of its contract with TMTA, and a breach of its statutory duties, which entitles TMTA to contract damages, statutory damages, and interest.

46.     Moreover, the Hartford breached the Policy *inter alia* by failing to timely involve itself in the earlier settlement discussions between TMTA and Tyler and his entities, and failing to timely acknowledge and pay TMTA's claim, without justification.

47.     The Hartford's refusal and delay in agreeing to involve itself in settlement discussions, despite its receipt of information sufficient to demonstrate TMTA's right to Policy proceeds, caused TMTA to lose a potential opportunity to settle the underlying issues.

48.     The Hartford's delay and refusal to acknowledge coverage was done in bad faith, and caused TMTA to expend attorneys' fees and other costs.

49.     MCL 500.2006 provides that penalty interest may be assessed against an insurer who fails to pay an insured on a timely basis.

50.     TMTA has suffered the loss of $300,000, and substantial economic damages, as a direct and proximate result of the Hartford's breach of contract, and is

8

entitled to penalty interest and exemplary damages for the Hartford's breach of contract and bad faith.

WHEREFORE, Plaintiff requests that this Court enter a judgment in its favor against Defendant for the full extent of its damages, plus interest, costs and attorney fees and such other relief as the Court may deem just and appropriate.

Respectfully submitted,
Strobl & Sharp, P.C.

Elaine A. Parson (P34493)
Krista A. Jackson (P66303)
Attorneys for Plaintiff
300 East Long Lake Road, Suite 200
Bloomfield Hills MI 48304-2376
(248) 540-2300  Fax (248) 205-2788
eparson@stroblpc.com

Dated: April 2, 2008

## JURY DEMAND

NOW COMES Plaintiff, Tooling, Manufacturing & Technologies Association, by and through its attorneys, Strobl & Sharp, PC, and hereby demand trial by jury of all matters pending in this action.

Respectfully submitted,
Strobl & Sharp, P.C.

Elaine A. Parson (P34493)
Krista A. Jackson (P66303)
Attorneys for Plaintiff
300 East Long Lake Road, Suite 200
Bloomfield Hills MI 48304-2376
(248) 540-2300  Fax (248) 205-2788
eparson@stroblpc.com

Dated: April 2, 2008

J:\DOCS\B2006\016\PLDG\SB228440.DOC

9





THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLICY CHANGE

Named Insured:  MICHIGAN TOOLING ASSOCIATION

Policy Change No.:  1      Effective Date of Change: 12:01 a.m. September 16, 2003

Date of Issue:   September 19, 2003    Policy Number 35BDDCM1571

## A. SCHEDULE *

☐ 1.   The named Insured is changed to:

*Important*

PLEASE ATTACH THIS
**ENDORSEMENT**
TO YOUR POLICY

☒ 2.   The following Insured(s) is/are added as a named Insured:

MTA Insurance Trust; MTA Dental Trust

☐ 3.   The following Insured(s) is/are deleted as a named Insured:

☐ 4.   The Mailing Address is changed to:

☐ 5.   The Policy Period is: extended to _____ or reduced to _____

☐ 6.   The following Insuring Agreement(s) is/are:
    ☐ Added to the Policy
    ☐ Deleted from the Policy
    ☐ Changed as respects the Limit(s) of Insurance and/or Deductible Amount(s)

INSURING AGREEMENT         Limit of Insurance
                        $

INSURING AGREEMENT         Deductible Amount
                        $

☐ 7.   The following Endorsement(s) is/are:
    ☐ Added to the Policy
    ☐ Deleted from the Policy
    ☐ Changed as respects to the Limit(s) of Insurance

ENDORSEMENT         Limit of Insurance
                        $

☐ 8.   The following Endorsement(s) is/are:
    ☐ Added to the Policy
    ☐ Deleted from the Policy

ENDORSEMENT

ADDED:

DELETED:

*Information required to complete this Schedule, if not shown on this endorsement, will be shown in the Declarations.
NOTE: If Items 1,3,5,6 (deleted, deductible increased, limit reduced) or 7 (deleted, limit reduced) See Instructions on reverse side.

*Michael S. Wilder*
Michael S. Wilder, Secretary

Ramani Ayer, President

Countersigned by: _____ , Authorized Agent

Form F-4219-0                         Page 1 of 2

© 1998, The Hartford
Includes copyrighted material of Insurance Services Office, Inc. with its permission
© copyright, Insurance Services Office, Inc., 1994

# CAPITAL
# INSURANCE
# GROUP

### 1263 West Square Lake Road, Bloomfield Hills, Michigan 48302
### Phone: (248) 333-2500 – Fax: (248) 333-2504

## FAX COVER SHEET

**DATE:** September 18, 2003    **FAX NUMBER:** 248-489-8436

**ATTN:** Mark Tyler

**COMPANY:** Michigan Tooling Association

**FROM:** Patricia Kidd

**TOTAL PAGES:** 3    (INCLUDING COVER SHEET)

**REGARDING:** Crime Coverage

Dear Mark,

Here is the revised binder amending the named Insureds on the policy.

Pat

**Capital Insurance Group**
1263 West Square Lake Road
Bloomfield Hills, MI 48302
Phone : 248-333-2500   Fax : 248-333-2504

| INVOICE# | 37579 | Page 1 |
|---|---|---|

| ACCOUNT NO. | CSR | DATE |
|---|---|---|
| MICH-10 | LL | 09/17/03 |

PRODUCER:
Robert F. Moglia, Jr.

BALANCE DUE ON
09/17/03

⌈Michigan Tooling Association⌉
Mark Tyler
28237 Orchard Lake Rd.
Farmington Hills, MI 48333

| Itm # | Due Date Trn | Type | Policy # | Description | Company | | Amount |
|---|---|---|---|---|---|---|---|
| 297925 | 09/17/03 | NEW | CRIM | 35BDDCM1571 | Crime 3yr pre-paid premium | ITT Hartford Insurance Co. | $ | 3,157.00 |
| | | | | | | Invoice Balance: | $ | 3,157.00 |

THANK YOU!!!   WE APPRECIATE YOUR BUSINESS.

*** PLEASE RETURN ONE COPY WITH YOUR REMITTANCE ***

SEP-18-2003  13:25      CAPITAL INSURANCE GROUP            2483330745      P.02

# ACORD. INSURANCE BINDER

| | CSR LL | DATE 09/18/03 |

**THIS BINDER IS A TEMPORARY INSURANCE CONTRACT, SUBJECT TO THE CONDITIONS SHOWN ON THE REVERSE SIDE OF THIS FORM.**

| PRODUCER | PHONE (A/C, No, Ext): 248-333-2500 / 248-333-2504 | COMPANY | | BINDER # 7660 |
|---|---|---|---|---|

Capital Insurance Group
1263 West Square Lake Road
Bloomfield Hills MI 48302
Robert F. Moglia, Jr.

COMPANY: ITT Hartford Insurance Co.

| EFFECTIVE DATE | TIME | | EXPIRATION DATE | TIME |
|---|---|---|---|---|
| 09/16/03 | 12:01 | X AM PM | 11/15/03 | X 12:01 AM NOON |

| CODE: | SUB CODE: |

X  THIS BINDER IS ISSUED TO EXTEND COVERAGE IN THE ABOVE NAMED COMPANY PER EXPIRING POLICY #:  BINDER

AGENCY CUSTOMER ID: MICH-10

INSURED

Michigan Tooling Association
28237 Orchard Lake Rd.
Farmington Hills MI 48333

DESCRIPTION OF OPERATIONS/VEHICLES/PROPERTY (Including Location)

## COVERAGES                                                                  LIMITS

| TYPE OF INSURANCE | COVERAGE/FORMS | DEDUCTIBLE | COINS % | AMOUNT |
|---|---|---|---|---|
| **PROPERTY** CAUSES OF LOSS | | | | |
| ☐ BASIC ☐ BROAD ☐ SPEC | | | | |
| **GENERAL LIABILITY** | | EACH OCCURRENCE | | $ |
| ☐ COMMERCIAL GENERAL LIABILITY | | FIRE DAMAGE (Any one fire) | | $ |
| ☐ CLAIMS MADE ☐ OCCUR | | MED EXP (Any one person) | | $ |
| | | PERSONAL & ADV INJURY | | $ |
| | | GENERAL AGGREGATE | | $ |
| | RETRO DATE FOR CLAIMS MADE: | PRODUCTS - COMP/OP AGG | | $ |
| **AUTOMOBILE LIABILITY** | | COMBINED SINGLE LIMIT | | $ |
| ☐ ANY AUTO | | BODILY INJURY (Per person) | | $ |
| ☐ ALL OWNED AUTOS | | BODILY INJURY (Per accident) | | $ |
| ☐ SCHEDULED AUTOS | | PROPERTY DAMAGE | | $ |
| ☐ HIRED AUTOS | | MEDICAL PAYMENTS | | $ |
| ☐ NON-OWNED AUTOS | | PERSONAL INJURY PROT | | $ |
| | | UNINSURED MOTORIST | | $ |
| | | | | $ |
| **AUTO PHYSICAL DAMAGE** DEDUCTIBLE | ☐ ALL VEHICLES ☐ SCHEDULED VEHICLES | ACTUAL CASH VALUE | | |
| ☐ COLLISION | | STATED AMOUNT | | $ |
| ☐ OTHER THAN COL: | | OTHER | | |
| **GARAGE LIABILITY** | | AUTO ONLY - EA ACCIDENT | | $ |
| ☐ ANY AUTO | | OTHER THAN AUTO ONLY: | | |
| | | EACH ACCIDENT | | $ |
| | | AGGREGATE | | $ |
| **EXCESS LIABILITY** | | EACH OCCURRENCE | | $ |
| ☐ UMBRELLA FORM | | AGGREGATE | | $ |
| ☐ OTHER THAN UMBRELLA FORM | RETRO DATE FOR CLAIMS MADE: | SELF-INSURED RETENTION | | $ |
| | | WC STATUTORY LIMITS | | |
| WORKERS COMPENSATION AND EMPLOYER'S LIABILITY | | E.L. EACH ACCIDENT | | $ |
| | | E.L. DISEASE - EA EMPLOYEE | | $ |
| | | E.L. DISEASE - POLICY LIMIT | | $ |

| SPECIAL CONDITIONS/ OTHER COVERAGES | Crime Coverage: Employee Theft $300,000; Depositors Forgery Computer Fraud $300,000 Theft $50,000. Deductilbe per line of coverage is $5,000. | | | $300,000; |
|---|---|---|---|---|
| | | | TAXES | $ |
| | | | ESTIMATED TOTAL PREMIUM | $ |

## NAME & ADDRESS

| | ☐ MORTGAGEE ☐ ADDITIONAL INSURED ☐ LOSS PAYEE |
|---|---|
| FOR INSURANCE PURPOSES ONLY | LOAN # |
| | AUTHORIZED REPRESENTATIVE  *Robt F Moglia Jr* |

ACORD 75-S (1/98)      NOTE: IMPORTANT STATE INFORMATION ON REVERSE SIDE      © ACORD CORPORATION 1993

SEP-18-2003  13:26      CAPITAL INSURANCE GROUP                    2483330748    P.03

## NOTEPAD:

INSURED'S NAME Michigan Tooling Association

MICH-10
CSR LL

PAGE 2
DATE 09/18/03

Complete named insured to read:
Michigan Tooling Association
MTA Salaried Employee Defined Benefits Plan
MTA Money Purchase Pension Plan
MTA Salaried Employee Defined Contribution Plan
MTA Deferred Compensation Plan
MTA Insurance Trust
MTA Dental Trust

TOTAL P.03

# CAPITAL
# INSURANCE
## GROUP                                   **(248) 333-2500**

**1263 West Square Lake Road, Bloomfield Hills, Michigan 48302**

September 26, 2003

Michigan Tooling Association
Mr. Mark Tyler
28237 Orchard Lake Rd.
P.O. Box 9151
Farmington Hills, MI  48333-9151

Re: Crime Policy #35BDDCM1571

Dear Mark,

Please find enclosed your new Crime policy with ITT Hartford Insurance Company, effective September 16, 2003.  Along with this new policy is an endorsement adding MTA Insurance Trust & MTA Dental Trust as named insured, per your request.

Our invoice is also enclosed for the three-year pre-paid premium of $3,157.00.

Your policy was checked for accuracy, and was issued per the your conversations with Bob Moglia. Please take a few minutes to review the enclosed and contact Bob or me with any questions or changes that may arise.

Thank you in advance for your attention into this matter, and for the opportunity to service your insurance needs.

Sincerely,

CAPITAL INSURANCE GROUP

*Patricia Kidd*

Patricia Kidd
Account Manager

Enclosure

**B. PROVISIONS**

1. Application of changes affected by this Endorsement:

   a. **Addition of a Deductible or Increase in Deductible Amount:** This change applies to loss resulting from acts committed or events occurring at any time, whether before or after the Effective Date of Change.

   b. **Deletion or Restriction (other than in a. above) of any Coverage or Decrease in any Limit of Insurance:** This change applies to loss resulting from acts committed or events occurring:
      (1) On or after the Effective Date of Change, and also
      (2) Before the Effective Date of Change if discovered after one year from that date.

   c. **All Changes Other Than in a. and b. Above:** This change applies to loss resulting from acts committed or events occurring on or after the Effective Date of Change.

2. No Limit of Insurance during any period will be cumulative with any other amount applicable to the same coverage during any other period.

Accepted:

First Named Insured  _____

By  _____

Title  _____

Instructions:   Complete, have signed by authorized person, and return

# CrimeSHIELD Policy
## for Mercantile Entities



**Co Code**

[1] Hartford Fire Insurance Company
Hartford, CT 06115

[3] Hartford Casualty Insurance Company
Hartford, CT 06115

[ ]

**Co Code**

[F] Hartford Insurance Company of Illinois
Naperville, IL 60566

[G] Hartford Insurance Company of the Midwest
Indianapolis, IN 46204

[J] Hartford Insurance Company of the Southeast
Maitland, FL 32751

The Company is shown above by Co. Code   [1]

**POLICY NUMBER**   35BDDCM1571

In return for the payment of the premium, and subject to all the terms of this Policy, we agree with you to provide the insurance stated in this Policy.

## DECLARATIONS

**ITEM**

1. Named Insured:   MICHIGAN TOOLING ASSOCIATION

2. Mailing Address: 28237 ORCHARD LAKE ROAD
   FARMINGTON HILLS, MI 48333

3. Policy Period:   from September 16, 2003 until cancelled
   (12:01 A.M. Standard Time at Your Mailing Address)

4. Coverages, Limits of Insurance and Deductibles:
   Insuring Agreements, Limit of Insurance and Deductible Amounts shown below are subject to all of the terms of this policy that apply.

| Insuring Agreements Forming Part of This Policy | Limit of Insurance | Deductible Amount |
|---|---|---|
| 1. Employee Theft | $300,000 | $5,000 |
| 2. Depositors Forgery or Alteration | $300,000 | $5,000 |
| 3. Theft, Disappearance and Destruction – *Money, Securities and Other Property* | $50,000 | $5,000 |
| 4. Robbery and Safe Burglary – *Money and Securities* | $0 | $0 |
| 5. Computer and Funds Transfer Fraud | $300,000 | $5,000 |

5. Form Numbers of Endorsements Forming Part of This Policy When Issued:
   B-3333-0, CLAIM-03, F-4214-0, F-4220-0, F-4295-0, F-4328-0, F-5011-0,
   Endorsement 184

6. Cancellation of Prior Insurance: By acceptance of this Policy you give us notice cancelling prior policies or bonds numbered:                                                    the cancellations to be effective at the time this policy becomes effective.

This Policy has been signed by the Company's President and Secretary, but it shall not be binding unless it is countersigned by its authorized representative.

Michael S. Wilder, *Secretary*

Countersigned by: _____        _____ President & COO

                                                                        , Authorized Representative

Throughout this Policy the words "you" and "your" refer to the named Insured in the Declarations. The words "we", "us", and "our" refer to the Company providing this Insurance. Other words and phrases that appear in quotation marks have a special meaning. Refer to Section V., Exclusions; Section VI., General Conditions; and Section VII., Definitions, to determine where this Policy restricts coverage.

I.  **CONSIDERATION CLAUSE**

In exchange for the payment of premium and subject to the Declarations, Insuring Agreements, Exclusions, General Conditions, Definitions and terms of this Policy, we will pay for loss which you sustain resulting directly from acts committed or events occurring at any time and discovered by you during the Policy Period shown in the Declarations or during the period of time provided in General Condition L., EXTENDED PERIOD TO DISCOVER LOSS.

II.  **INSURING AGREEMENTS**

Coverage is provided under the following Insuring Agreements if either an amount is stated in the Insuring Agreement or for which there is a Limit of Liability shown in the Declarations.

A.  **INSURING AGREEMENT 1. - EMPLOYEE THEFT**

We will pay for loss of or damage to "money", "securities" and "other property" which results directly from "theft" by an "employee", whether or not identifiable, while acting alone or in collusion with other persons.

B.  **INSURING AGREEMENT 2. - DEPOSITORS FORGERY OR ALTERATION**

1.  We will pay for loss resulting directly from "forgery" or alteration of checks, drafts, promissory notes, or similar written promises, orders or directions to pay a sum certain in "money" that are
    a.  made or drawn upon you; or
    b.  made or drawn upon one acting as your agent and drawn on your account
    or that are purported to have been so made or drawn.
2.  We will treat mechanically reproduced signatures the same as handwritten signatures.
3.  If you are sued for refusing to pay any instrument in B.1. above, on the basis that it has been forged or altered and you have our written consent to defend against that suit, we will pay for any reasonable legal expenses that you incur and pay in such defense. The amount that we will pay is in addition to the Limit of Liability applicable to this Insuring Agreement. If a Deductible Amount applies to this Insuring Agreement, we will also apply it to the amount of legal expenses incurred in this Insuring Agreement.
4.  You must include with your proof of loss any instrument involved in that loss, or, if that is not possible, an affidavit setting forth the amount and cause of loss and describing both sides of said instrument..
5.  This Insuring Agreement covers loss you sustain anywhere in the world; the Territory General Condition does not apply.

C.  **INSURING AGREEMENT 3. - THEFT, DISAPPEARANCE AND DESTRUCTION -**
    **MONEY, SECURITIES AND OTHER PROPERTY**

1.  **INSIDE THE PREMISES**

    a.  We will pay for loss of "money" and "securities" inside the "premises" or "banking premises" resulting directly from "theft", disappearance or destruction.
    b.  We will pay for loss of or damage to "other property"
        (1)  inside the "premises" resulting directly from an actual or attempted "robbery" of a "custodian"; or
        (2)  inside the "premises" in a safe or vault resulting directly from an actual or attempted "safe burglary".
    c.  We will pay for loss from damage to the "premises" or its exterior resulting from an actual or attempted
        (1)  "theft" of "money" or "securities"; or
        (2)  "robbery" or "safe burglary" of "other property"

Form F-4201-0

Page 2 of 12

© 1998, The Hartford

if you are the owner of the "premises" or are liable for damage to it.

d. We will pay for loss of or damage to a locked safe, vault, cash register, or cash box or cash drawer located inside the "premises" resulting directly from an actual or attempted "theft" or unlawful entry into those containers.

### 2. OUTSIDE THE PREMISES

We will pay for

a. loss of "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from "theft", disappearance or destruction; or

b. loss of or damage to "other property" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

## D. INSURING AGREEMENT 4. – ROBBERY AND SAFE BURGLARY – MONEY AND SECURITIES

### 1. INSIDE THE PREMISES

We will pay for loss of or damage to "money" and "securities"

a. resulting directly from an actual or attempted "robbery" of a "custodian" inside the "premises"; or

b. resulting directly from an actual or an attempted "safe burglary" occurring inside the "premises" or inside a "banking premises".

### 2. OUTSIDE THE PREMISES

We will pay for loss of or damage to "money" and "securities" outside the "premises" in the care and custody of a "messenger" or an armored motor vehicle company resulting directly from an actual or attempted "robbery".

## E. INSURING AGREEMENT 5. – COMPUTER AND FUNDS TRANSFER FRAUD

We will pay for loss of and loss from damage to "money", "securities" and "other property" following and directly related to the use of any computer to fraudulently cause a transfer of that property from inside the "premises" or "banking premises"

1. to a person (other than a "messenger") outside those "premises"; or

2. to a place outside those "premises".

And, we will pay for loss of "money" or "securities" through "funds transfer fraud" resulting directly from "fraudulent transfer instructions" communicated to a "financial institution" and instructing such institution to pay, deliver, or transfer "money" or "securities" from your "transfer account".

## F. INSURING AGREEMENT 6. – MONEY ORDERS AND COUNTERFEIT CURRENCY

1. We will pay for loss resulting directly from your having in good faith, in exchange for merchandise, "money" or services accepted

a. money orders issued by any post office, express company or bank in the United States of America or Canada that are not paid upon presentation; and

b. "counterfeit" United States of America or Canadian Paper currency that is acquired during the regular course of business. The Limit of Insurance under this insuring agreement is $50,000, and there is no deductible applying to loss covered under this agreement.

2. You must notify the police if you have reason to believe that you have accepted a "counterfeit" money order or "counterfeit" paper currency.

III.   LIMIT OF INSURANCE

The most that we will pay for loss in any one "occurrence" is the applicable Limit of Insurance shown in the Declarations.

IV.   DEDUCTIBLE

We will not pay for loss in any one "occurrence" unless the amount of the loss exceeds the Deductible Amount shown in the Declarations. We will then pay the amount of loss in excess of the Deductible Amount, up to the Limit of Insurance. In the event that more than one Deductible Amount could apply to the same loss, only the highest Deductible Amount will be applied.

You must give us notice as soon as possible of any loss of the type insured under the Policy if, in your best estimation, such loss will, or will appear to exceed 25% of the current Deductible Amount for the Insuring Agreement under which the loss has occurred.

V.   EXCLUSIONS  *(Applying To All Insuring Agreements Unless Otherwise Specified)*

This Policy Does Not Apply To And We Will Not Pay For:

A.   **Accounting or Arithmetical Errors or Omissions**
Loss resulting from accounting or arithmetical errors or omissions.

B.   **Acts Committed By You**
Loss resulting from "theft" or any other dishonest or criminal acts committed by you whether acting alone or in collusion with others.

C.   **Acts of Employees, Managers, Directors, Trustees or Representatives**
Loss resulting from "theft" or any other dishonest or criminal act committed by any of your "employees", managers, directors, trustees or representatives whether acting alone or in collusion with other persons or while performing services for you or otherwise except when covered under Insuring Agreement 1.

D.   **Employee Cancelled Under Prior Insurance**
Loss cause by any "employee" of yours or predecessor in interest of yours, for whom similar prior insurance has been cancelled and not reinstated since the last cancellation.

E.   **Exchanges or Purchases**
Loss resulting from the giving or surrendering of property in any exchange or purchase.

F.   **Fire**
Loss from damage to the premises resulting from fire, however caused, except for loss of or damage to "money" or "securities" and loss from damage to a safe or vault under Insuring Agreement 3. and 4.

G.   **Governmental Action**
Loss resulting from seizure or destruction of property by order of governmental authority.

H.   **Indirect Loss**
Loss that is an indirect result of any act or "occurrence" covered by this Policy including but not limited to loss resulting from

1.   your inability to realize income that you would have realized had there been no loss of or damage to "money", "securities" or "other property".

2.   payment or damages of any type for which you are legally liable. But we will pay compensatory damages arising directly from a loss covered under this policy.

3.   payment of costs, fees or other expenses you incur in establishing either the existence of or the amount of loss under this policy.

I.   **Inventory Shortages**
Loss, or that part of any loss, the proof of which is as to its existence or amount is dependent upon

1.   an inventory computation; or

2.   a profit and loss computation.

However, where you establish wholly apart from such inventory computations that you have sustained a loss covered under this Policy, then you may offer your inventory records and actual physical count of inventory in support of the amount of loss claimed.

© 1998, The Hartford

J. **Legal Expenses**
Expenses related to any legal action except when covered under Insuring Agreement 2.

K. **Money Operated Devices**
Loss of property contained in any money operated device unless the amount of any "money" deposited in it is recorded by a continuous recording instrument in the device.

L. **Motor Vehicles or Equipment And Accessories**
Loss of or damage to motor vehicles, trailers, or semi-trailers or equipment or accessories attached to them.

M. **Nuclear**
Loss resulting from nuclear reaction, nuclear radiation, or radioactive contamination, or any related act or incident.

N. **Risks Inherent in Insurance Operations**
Loss resulting directly or indirectly from contractual or extra contractual liability sustained by you in connection with the issuance of contracts or purported contracts of insurance, indemnity or suretyship.

O. **Trading Losses**
Loss resulting directly or indirectly from trading, whether in your name or in a genuine or fictitious account.

P. **Transfer or Surrender of Property**
Loss of or damage to property of any kind after it has been transferred or surrendered to a person or place outside the "premises" or "banking premises"
1. on the basis of unauthorized instructions; or
2. as a result of a threat to do bodily harm to any person; or
3. as a result of a threat to do damage to any property.
But this Exclusion does not apply under Insuring Agreement 3. or 4. to loss of "money", "securities" and "other property" while outside the "premises" or "banking premises" in the care and custody of a "messenger" if you:
1. had no knowledge of any threat at the time that the conveyance began; or
2. had knowledge of a threat at the time the conveyance began, but the loss was not related to the threat.

Q. **Vandalism**
Loss from damages to the "premises" or to the exterior of any safe, vault, cash box, cash drawer or, cash register by vandalism or mischief.

R. **Voluntary Parting of Title To or Possession of Property**
Loss resulting from your, or anyone acting on your express or implied authority, being induced by any dishonest act to voluntarily part with title to or possession of any property.

S. **War and Similar Actions**
Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion, or revolution, or any related act or incident.

T. **Warehouse Receipts Losses**
Loss resulting from fraudulent or dishonest signing, issuing, cancelling or failing to cancel, a warehouse receipt or any papers connected with it.

VI. **GENERAL CONDITIONS**

A. **ARMORED MOTOR VEHICLE COMPANIES**
Under Insuring Agreements 3. and 4. we will pay only for the amount of loss you cannot recover
1. under your contract with the armored motor vehicle company; and
2. from any insurance or indemnity carried, by or for the benefit of customers of the armored motor vehicle company or from the armored motor vehicle company.

B. **CALCULATION OF PREMIUM**
The premium charged for this Policy was computed based on rates in effect at the time the Policy was issued. On each renewal, continuation, or anniversary of the effective date of this Policy, we will compute the premium in accordance with our rates and rules then in effect.

© 1998, The Hartford

**C.   CANCELLATION OR NONRENEWAL OF POLICY**

1.   **CANCELLATION**

a.   The first named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us advance written notice of cancellation.

b.   We may cancel this policy by mailing or delivering to the first named Insured written notice of cancellation at least:

(1)   10 days before the effective date of cancellation if we cancel for non-payment of premium; or

(2)   90 days before the effective date of cancellation if we cancel for any other reason.

c.   We will mail or deliver our notice to the first named Insured's last mailing address known to us.

d.   Notice of cancellation will state the effective date of cancellation.  The Policy Period will end on that date.

e.   If this policy is cancelled, we will send the first named Insured any premium refund due.  If we cancel, the refund will be pro rata.  If the first named Insured cancels, the refund may be less than pro rata.  The cancellation will be effective even if we have not made or offered a refund.

f.   If notice is mailed, proof of mailing will be sufficient proof of notice.

2.   **NONRENEWAL**

a.   We may elect not to renew this Policy at each annual anniversary date.

b.   If we decide not to renew this policy, we will mail or deliver written notice to the first named Insured shown in the Declarations, at the address shown in this Policy, at least 90 days before the annual anniversary date.

c.   If notice is mailed, proof of mailing will be sufficient proof of notice.

**D.   CANCELLATION AS TO ANY EMPLOYEE**

Insuring Agreement 1. is cancelled as to any "employee"

1.   immediately upon discovery by you or any of your partners, members, managers, officers, directors or trustees not in collusion with the "employee" of "theft" or any other dishonest act committed by the "employee" whether before or after becoming employed by you; or

2.   on the date specified in a notice mailed to you.  The date will be at least 30 days after the date of the mailing.  And, the mailing of notice to you at the last mailing address known to us will be sufficient proof of notice.  Delivery of notice is the same as mailing.

**E.   CHANGES**

This Policy contains all of the agreements between you and us concerning the Insurance afforded.  The first named Insured shown in the Declarations is authorized to make changes in the terms of this Policy with our consent.  This Policy's terms can be amended or waived only by endorsement issued by us and made a part of this Policy.

**F.   CONCEALMENT, MISREPRESENTATION OR FRAUD**

This Policy is void in any case of fraud by you as it relates to this Policy at any time.  It is also void if you or any other Insured, at any time, intentionally conceal or misrepresent a material fact concerning

1.   this Policy;

2.   the property covered under this Policy;

3.   your interest in the property covered under this Policy; or

4.   a claim under this Policy.

**G.   CONSOLIDATION OR MERGER**

If through consolidation or merger with, or purchase or acquisition of assets or liabilities of, some other entity, any additional persons become "employees" or you acquire the use and control of any additional "premises"

1.   you must give us written notice and obtain our written consent to extend this insurance to such additional "employees" or "premises".  We may condition our consent upon payment of an

© 1998, The Hartford

additional premium; but there shall only be a premium charge if such merger or acquisition results in a 15%, or greater, increase in the number of "employees", assets or revenues acquired through the merger or acquisition.

2. For the first 60 days after the effective date of such consolidation, merger, acquisition of assets or liabilities, any insurance afforded for "employees" or "premises" also applies to these additional "employees" or "premises" for acts committed within this 60 day period.

**H.  DISCOVERY**

1. We will pay for loss which you sustain through acts or events committed or occurring at any time and which are discovered by you during the Policy Period or during the period provided in General Condition L., EXTENDED PERIOD TO DISCOVER LOSS.

2. Discovery of loss occurs when you first become aware of facts which would cause a reasonable person to assume that a loss covered by this Policy has been, or may be incurred even though the exact amount or the details of the loss may not then be known.

3. Discovery also occurs when you receive notice of an actual or potential claim against you alleging facts, which if true, would constitute a covered loss under this policy.

**I.  DUTIES IN THE EVENT OF LOSS**

After you discover a loss or a situation which may result in a loss of or damage to "money", "securities" or "other property", you must

1. notify us as soon as possible but no later than 60 days after discovery of loss.
2. submit to examination under oath at our request and give us a signed statement of your answers.
3. give us a detailed, sworn proof of loss within 120 days.
4. cooperate with us in the investigation and settlement of any claim.
5. notify the police if you have reason to believe that your loss involves a violation of law.

**J.  EMPLOYEE BENEFIT PLANS**

1. If any one or more "employee benefit Plans" are insured jointly with any other entity under this Policy, you or the plan administrator must select a Limit of Insurance for Insuring Agreement 1. that is sufficient to provide a Limit of Insurance for each Plan which is at least equal to that required if each Plan were separately insured.

2. If the first named Insured is an entity other than a Plan, any payments we make to the Insured for loss sustained by any Plan will be held by that Insured for the use and benefit of the Plan(s) sustaining the loss.

3. If two or more Plans are insured under this Policy, any payment which we make for loss sustained by two or more Plans, or of commingled "funds" or "other property" of two or more Plans, which arises out of one "occurrence", is to be shared by each Plan sustaining loss in the proportion that the Limit of Insurance required for each Plan bears to the total of those limits.

4. This Policy insures those Plans which are named as additional insureds in the Declarations or on any attached Schedule for loss through fraud or dishonesty as defined in Section 2580.412-9 of the Employee Retirement Income Security Act (ERISA) as amended. For any Plans not specifically named as Insureds, this Policy is deemed to be in compliance with, and satisfy the bonding requirements of Section 2580.312-11 of the act. This insurance provides a Limit of Insurance which is equal to 10% of the amount of the funds handled or $500,000., whichever is less, for each Plan bonded and the minimum Limit of Insurance for any Plan shall be $1,000. The Limit of Insurance available for any Plan loss will be determined by the amount of funds handled on the date when any covered loss occurs subject to the foregoing limitations.

5. The Deductible provision which applies to the Employee Theft Insuring Agreement shall not apply to loss which is sustained by any Plan subject to ERISA and which Plan is covered under this insurance.

**K.  EXAMINATION OF YOUR BOOKS AND RECORDS**

1. We may examine and audit your books and records as they relate to this Policy at any time during the Policy Period and up to three years afterward.

2. We may also examine and audit the books and records of any organization which you newly acquire and that is deemed to be a named Insured under this Policy.

© 1998, The Hartford

**L.   EXTENDED PERIOD TO DISCOVER LOSS**

We will pay for loss which you sustained prior to the effective date of termination or cancellation of this insurance, which is discovered by you

1.   no later than 60 days from the date of the termination, cancellation or non-renewal; and
2.   as respects any "employee benefit Plan(s)", no later than 1 year from the date of that termination, cancellation or non-renewal.

However, this extended period to discover loss terminates immediately upon the effective date of any other insurance obtained by you to replace, in whole or in part, the insurance afforded by this Policy, whether or not such other insurance provides coverage for loss sustained prior to its effective date.

**M.   FACSIMILE SIGNATURES**

We will treat mechanically reproduced facsimile signatures the same as handwritten signatures.

**N.   INSPECTION AND SURVEYS**

1.   We have the right but are not obligated to
   a.   make inspections and surveys at any time;
   b.   give you reports on the conditions we find; and
   c.   recommend changes.
2.   Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or the safety of workers or the public. And, we do not warrant that conditions
   a.   are safe or healthful; or
   b.   comply with laws, regulations, codes or standards.
3.   This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

**O.   JOINT INSURED**

1.   If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes of this Policy. If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.
2.   If any Insured, partner, member or officer of an Insured has knowledge of any information relevant to this Policy, that knowledge is considered to be knowledge of every Insured.
3.   An "employee" of any Insured is considered to be an "employee" of every Insured.
4.   If this Policy or any of its Insuring Agreements is cancelled, terminated or non-renewed as to any Insured, loss sustained by that Insured is covered only if discovered by you during the period of time provided in General Condition L., EXTENDED PERIOD TO DISCOVER LOSS. And, this extended period to discover loss also terminates in accordance with paragraph 2 of that condition.
5.   We will not pay a greater amount for loss sustained by more than one Insured than we would pay if all of the loss had been sustained by one Insured.

**P.   LEGAL ACTION AGAINST US**

You may not bring any legal action against us involving loss

1.   unless you have complied with all the terms of this Policy; and
2.   until 90 days after you have filed proof of loss with us; and
3.   unless such action is brought within 2 years from the date that you discover such loss.

**Q.   LIBERALIZATION**

If we adopt any revision that would broaden the coverage within the Policy without additional premium within 45 days prior to or during the Policy Period, the broadened coverage will immediately apply to this Policy.

**R.   LOSS COVERED UNDER MORE THAN ONE INSURING AGREEMENT OF THIS POLICY**

If two or more Insuring Agreements of this Policy apply to the same loss, we will pay the lesser of

1.   the actual amount of loss; or
2.   the sum of the Limits of Insurance applicable to those Insuring Agreements.

---

Form F-4201-0

© 1998, The Hartford

**S. NON ACCUMULATION OF LIMIT OF INSURANCE**

Regardless of the number of years this Policy remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or Policy Period to Policy Period.

**T. OTHER INSURANCE**

1. This policy does not apply to loss recoverable or recovered under other insurance or indemnity. If the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this Policy will apply to that part of the loss, other than that falling within any Deductible Amount, not recoverable or recovered under the other insurance or indemnity.

2. However, this Policy will not apply to the amount of loss that is more than the applicable Limit of Insurance shown in the Declarations.

**U. OWNERSHIP OF PROPERTY; INTERESTS COVERED**

1. The property covered under this Policy is limited to property
   a. that you own, lease or client property which you hold on your "premises" or which is in the custody of one acting as your "messenger" and while such property is in transit; or
   b. for which you are legally liable excepting loss of client property occurring on such client's premises.

2. However, this Policy is for your benefit alone and no other person or organization has any rights or benefits. However, any claim for a loss of client property occurring on your "premises" or while in transit in the custody of a "messenger" may only be made by you in your proof of loss.

**V. PREMIUMS**

The first named Insured is responsible for the payment of all premiums and will be the payee for all return premiums we pay.

**W. RECORDS**

You must keep records of all property covered under this policy so we can verify the amount of any loss.

**X. RECOVERIES**

1. Any recoveries, less the cost of obtaining them, made after the settlement of loss covered by this Policy will be distributed
   a. to you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;
   b. then to us, until we are reimbursed for the settlement made; and
   c. then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

2. Recoveries do not include any recovery
   a. from insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or
   b. of original "securities" after duplicates of them have been issued.

**Y. SPECIAL LIMIT OF INSURANCE FOR SPECIFIED PROPERTY (Insuring Agreement 3.)**

We will pay no more than $5,000, for any one "occurrence" of loss of or damage to

1. precious metals, precious or semi-precious stones, pearls, furs or completely or partially completed articles made of or containing such materials that constitute the principal value of such articles; or

2. manuscripts, drawings or records of any kind or the cost of reconstructing them or reproducing any information contained in them.

**Z. TERRITORY**

This Policy covers acts committed or events occurring within the United States of America, U.S. Virgin Islands, Puerto Rico or Canada. However, we will pay for loss under Insuring Agreement 1. which is caused by an "employee" while temporarily outside of the territories named in this General Condition for a period of not more than 90 consecutive days.

© 1998, The Hartford

**AA. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY**

1. Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.
2. If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**BB. TRANSFER OF YOUR RIGHTS OF RECOVERY AGAINST OTHERS TO US**

You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

**CC. VALUATION**

1. Subject to the applicable Limit of Insurance, we will pay for
   a. loss of "money" but only up to and including its face value. We may, at our option, pay for a loss of "money" issued by other than the United States of America in either the face value in the "money" issued in that country, or, in the United States of America dollar equivalent determined by the rate of exchange on the day that the loss occurred.
   b. loss of "securities" but only up to and including their value at the close of business on the day that the loss was discovered. But, we may, at our option, 1) pay the value of such "securities", 2) replace them in kind in which event you must assign to us all your rights, title and interest in and to those "securities" or 3) pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding
      (1) the value of the "securities" at the close of the business on the day the loss was discovered; or
      (2) the Limit of Insurance.
   c. loss of or damage to "other property" or loss from damage to the "premises" or its exterior for the replacement cost of the property without deduction for depreciation. However, we will not pay for more than the lesser of
      (1) the Limit of Insurance applicable to the lost or damaged property; or
      (2) the cost to replace the lost or damaged property with property of comparable material and quality and used for the same purpose; or
      (3) the amount that you actually spend that is necessary to repair or replace the lost or damaged property.
2. We will not pay on a replacement cost basis for any loss or damage
   a. until the lost or damaged property is actually repaired or replaced; and
   b. unless the repair or replacement is made as soon as reasonably possible after the loss or damage.
   If the lost or damaged property is not repaired or replaced, we will pay based on actual cash value.
3. We may, at our option, pay for loss of or damage to property other than "money" in the "money" of the country in which the loss occurred; or in the United States of America dollar equivalent of the "money" of the country where the loss occurred determined by the rate of exchange on the day the loss was discovered. Any property that we pay for or replace becomes our property.
4. Loss of or loss from damage to any books or records of account or other records, tapes, disks, or electronic media used by you in the business but only if
   a. such books, records, tapes or disks are actually reproduced and then only for not more than the blank books, pages, tapes and disks or other materials plus the cost of labor for the actual transcription or copying of data which you shall furnish to reproduce such books, records, tapes or disks.

**VII  DEFINITIONS**

A. "Banking premises" means the interior portion of that part of any building occupied by a banking institution or similar safe depository.
B. "Counterfeit" means an imitation of an actual valid original which is intended to deceive and to be taken as an original.

© 1998, The Hartford

C.  *"Custodian"* means you, or any of your partners, or members or any "employee" while having the care and custody of property inside the "premises", excluding any person while acting as a "watchperson" or janitor.

D.  *"Employee"* means
   1.  any natural person
       a.  while in your service or for 60 days after termination of service; and
       b.  who you compensate directly by salary, wages, commissions; and
       c.  who you have the right to direct and control while performing services for you; including one
       d.  who is performing services for you as the chairman, or a member of any committee and whether compensated or not; or
       e.  who is a director or trustee while acting as a member of any of your elected or appointed committees to perform on your behalf, specific, as distinguished from general directorial acts; or
       f.  who is a non-compensated officer; or
       g.  who is a volunteer who is not compensated, other than one who is a fund solicitor, while performing services for you that are usual to the duties of an "employee"; or
       h.  who is a former employee, director, partner, member, representative or trustee retained as a consultant while performing services for you; or
       i.  who is a student intern or guest student pursuing studies or duties in any of your offices or "premises"; and
       j.  who is your partner or member (of limited liability corporations), but we will not pay for loss caused by any partner or member, unless the amount of the loss exceeds the sum of
           (1)  any amounts you owe that partner or member; and
           (2)  the value of that partner's partnership interest, or that member's ownership interest determined by the closing of your organization's books on the date of discovery of the loss by your organization by anyone not in collusion with the person causing the loss, and
           (3)  any applicable Deductible Amount; then
           we will pay the amount of loss excess of that sum, up to the Limit of Insurance applicable to Insuring Agreement 1.
   2.  a natural person who is a trustee, officer, "employee", administrator or manager, except an administrator or a manager who is an independent contractor, of any "employee benefit Plan(s)" insured under this Policy; and your director or trustee while that person is handling "funds" or "other property" of "employee benefit Plan(s)" insured under this Policy.
   3.  a natural person who is furnished temporarily to you to substitute for a permanent "employee" to meet seasonal or short term work load conditions and while that temporary person is subject to your direction and control and performing services for you.  However, such persons are excluded while having care and custody of property outside the "premises"; and
       a.  "employee" does NOT mean
           (1)  any agent, broker, person leased to you by a labor leasing firm, factor, commission merchant, consignee, independent contractor or representative of the same general character; or
           (2)  any manager, director, partner, member or trustee except while performing acts coming within the scope of the usual duties of an "employee".

E.  *"Employee benefit Plan(s)"* means any welfare or pension Plan listed in the Declarations, on an attached schedule or for which automatic coverage is afforded that is subject to the Employee Retirement Income Security Act (ERISA) of 1974, as amended.

F.  *"Financial Institution"* means a bank, savings bank, savings and loan association or similar thrift institution, a stockbroker, mutual fund, liquid assets fund, or similar investment institution in which you maintain a "transfer account".

G.  *"Forgery"* means the signing of the name of another person or organization with intent to deceive; it does not mean a signature which consists in whole or in part of one's own name signed with or without authority, in any capacity, for any reason.

© 1998, The Hartford

H. *"Fraudulent transfer instructions"* means
1. fraudulent electronic, telegraphic, facsimile, cable, teletype or telephone instructions to a "financial institution" to debit a "transfer account" and to pay, transfer or deliver "money" or "securities" from such account and which instructions purport to have been authorized by you but which have been fraudulently transmitted by another; or
2. fraudulent written instructions to a "financial institution" to debit a "transfer account" and to pay, transfer or deliver "money" or "securities" from such account through an electronic funds transfer system at specified times or under specified conditions and which instructions purport to have been duly authorized by you but which have been fraudulently issued, forged or altered by another.

I. *"Funds transfer fraud"* means "theft" of "money" or "securities" from any of your "transfer accounts" at a "financial institution" and occurring through "fraudulent transfer instructions" communicated to such "financial institution".

J. *"Messenger"* means you, any of your partners or members or any "employee" while having care and custody of property outside the "premises".

K. *"Money"* means currency, coins and bank notes in current use and having a face value; and travelers checks, register checks and money orders held for sale to the general public.

L. *"Occurrence"* means
1. as respects the Employee Theft Insuring Agreement, all loss caused by, or involving, one or more "employees", whether the result of a single act or a series of acts.
2. as respects the Forgery or Alteration Insuring Agreement, all loss caused by any person or in which that person is involved, whether the loss involves one or more instruments.
3. as respects all other Insuring Agreements, an act or series of related acts involving one or more persons; or an act or event or a series of related acts or events not involving any person.

M. *"Other Property"* means any tangible property other than "money" or "securities" that has intrinsic value but does not include any property excluded under this Policy. "Other property" does not include trade secrets, proprietary information, confidential information or any copyrights, patents, trademarks, proprietary manufacturing or processing procedures, or secret or confidential information, including but not limited to credit card numbers, bank account numbers or any similar information.

N. *"Premises"* means the interior of that portion of any building which you occupy in conducting your business.

O. *"Robbery"* means the unlawful taking of property from the care and custody of a person by one who has caused or threatened to cause that person bodily harm, or, committed an obviously unlawful act witnessed by that person.

P. *"Safe burglary"* means the unlawful taking of property from within a locked safe or vault by a person unlawfully entering the safe or vault as evidenced by marks of forcible entry upon its exterior, or, the taking of a safe or vault from inside the "premises".

Q. *"Securities"* means negotiable or non-negotiable instruments or contracts representing either "money" or property and includes tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and, evidences of debt issued in connection with credit or charge cards, which cards are not issued by you; but does not include "money".

R. *"Theft"* means the unlawful taking of "money", "securities" or "other property" to the deprivation of the insured.

S. *"Transfer account"* means an account maintained by you at a "financial institution" from which you or your authorized representative may cause the payment, transfer or delivery of "money" or "securities" by any means described in the "fraudulent transfer instructions" definition.

T. *"Watchperson"* means any person who you retain specifically to have the care and custody of property inside the "premises" and who has no other duties.

© 1998, The Hartford



| Insured's Name |
| --- |
| MICHIGAN TOOLING ASSOCIATION |
| Insured's Mailing Address |
| 28237 ORCHARD LAKE ROAD |
| FARMINGTON HILLS, MI 48333 |
| Policy Number |
| 35BDDCM1571 |

# IMPORTANT NOTICE TO OBLIGEES/POLICYHOLDERS – TERRORISM RISK INSURANCE ACT OF 2002

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002, effective November 26, 2002, we must make terrorism coverage available in your bond/policy. However, the actual coverage provided by your bond/policy for acts of terrorism, as is true for all coverages, is limited by the terms, conditions, exclusions, limits, other provisions of your bond/policy, any endorsements to the bond/policy and generally applicable rules of law.

Any terrorism coverage provided by this bond/policy is partially reinsured by the United States of America under a formula established by Federal Law. Under this formula, the United States will pay 90% of covered terrorism losses exceeding a statutorily-established deductible paid by sureties/insurers until such time as insured losses under the program reach $100 billion. If that occurs, Congress will determine the procedures for, and the source of, any payments for losses in excess of $100 billion.

The premium charge that has been established for terrorism coverage under this bond/policy is either shown on this form or elsewhere in the bond/policy. If there is no premium shown for terrorism on this form or elsewhere in the bond/policy, there is no premium for the coverage.

| Terrorism premium: | $0 |
| --- | --- |

© 2002, The Hartford



## Claims Inquiries Notice

Hartford Fire Insurance Company
Hartford Casualty Insurance Company
Hartford Accident and Indemnity Company
Hartford Underwriters Insurance Company

Twin City Insurance Company
Hartford Insurance Company of Illinois
Hartford Insurance Company of the Midwest
Hartford Insurance Company of the Southwest

Please address inquiries regarding Claims for all surety and fidelity products issued by The Hartford's underwriting companies to the following:

| | | |
|---|---|---|
| Phone Number: | : | 888-266-3488 |
| Fax – Claims | : | 860-757-5835 or 860-547-8265 |
| E-mail | : | claims@1stepsurety.com |
| | | |
| Mailing Address | : | The Hartford |
| | | BOND, T-4 |
| | | 690 Asylum Avenue |
| | | Hartford, CT 06115 |

Claims Inquiries Notice 2003



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## JOINT INSURED

This endorsement modifies insurance provided under the following:

INSURING AGREEMENT -   ☒   EMPLOYEE THEFT - INSURING AGREEMENT 1.
                       ☐   EMPLOYEE THEFT - INSURING AGREEMENT 1.A.
                       ☐   EMPLOYEE THEFT - INSURING AGREEMENT 1.B.
                       ☒   DEPOSITORS FORGERY OR ALTERATION - INSURING AGREEMENT 2.
                       ☒   THEFT, DISAPPEARANCE AND DESTRUCTION -
                           MONEY, SECURITIES AND OTHER PROPERTY - AGREEMENT 3.
                       ☐   ROBBERY AND SAFE BURGLARY -
                           MONEY AND SECURITIES - AGREEMENT 4.
                       ☒   COMPUTER AND FUNDS TRANSFER FRAUD - INSURING AGREEMENT .5
                       ☐

The following is/are added as a named insured:

MTA Salaried Employee Defined Benefits Plan; MTA Money Purchase
Pension Plan; MTA Salaried Employee Defined Contribution Plan; MTA
Deferred Compensation Plan

The following is/are deleted as a named insured:

Form F-4214-0                                                          Page 1 of 1

© 1998, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RETROACTIVE DATE ENDORSEMENT
# LOSS SUSTAINED COVERAGE

This endorsement applies to all of the Insuring Agreements forming a part of this Policy.

## A. SCHEDULE

**RETROACTIVE DATE**

September 16, 2003

## B. PROVISIONS

1. This Policy is amended by deleting the CONSIDERATION CLAUSE in its entirety and by replacing it with the following:

   In exchange for the payment of premium and subject to the Declarations, Insuring Agreements, Definitions, Exclusions, General Conditions and terms of the Policy, we will pay for loss which you sustain resulting directly from acts committed or *events occurring after the* RETROACTIVE DATE shown in the SCHEDULE and discovered by you during the Policy Period shown in the Declarations or during the period of time provided in the EXTENDED PERIOD TO DISCOVER LOSS General Condition.

2. Paragraph 1. of the DISCOVERY General Condition is deleted and replaced by the following:

   1. We will pay for loss which you sustain directly from acts committed or events *occurring after the* RETROACTIVE DATE shown in the SCHEDULE and which are discovered by you during the Policy Period or during the period provided in the EXTENDED PERIOD TO DISCOVER LOSS General Condition.

© 1998, The Hartford



### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# MICHIGAN CHANGES

* The following Cancellation and Nonrenewal General Condition do not apply to coverage provided for employee theft (INSURING AGREEMENT 1.) or governmental employee theft (INSURING AGREEMENT 1.A. and 1.B).

A. Paragraph a., c., and e. of the CANCELLATION General Condition are replaced as follows:

    a. The first named Insured shown in the Declarations may cancel this Policy by mailing or delivering to us or our authorized agent advance notice of cancellation.

    c. We will mail or deliver our notice to the first named Insured's last mailing address known to us or our authorized agent.

    e. If this Policy is canceled, we will send the first named Insured any pro rata premium refund due. The minimum earned premium shall not be less than the pro rata premium for the expired time or $25.00, whichever is greater. The cancellation will be effective even if we have not made or offered a refund.

B. Paragraph b. and c. of the NONRENEWAL General Condition are replaced by the following:

    b. If we decide not to renew this Policy, we will mail or deliver to the first named Insured's last mailing address known to us or our authorized agent written notice of the nonrenewal not less than 30 days before the expiration date.

    c. If notice is mailed, proof of mailing shall be sufficient proof of notice.

C. With respect to the DUTIES IN THE EVENT OF LOSS General Condition, when forming a part of this Policy, notice given by or on behalf of the insured to our authorized agent, with particulars sufficient to identify the insured, shall be considered notice to us.

Form F-4295-0                                                             Page 1 of 1

© 1998, The Hartford
Includes copyrighted material of Insurance Services Office, Inc. with its permission
©copyright, Insurance Services Office, Inc., 1992, 1997



THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# BRIDGE ENDORSEMENT
# DISCOVERY SUPERSEDING LOSS SUSTAINED COVERAGE

This endorsement applies to the Policy and all of the Insuring Agreements forming part of this Policy.

**PROVISIONS**

If the Policy to which this endorsement is attached has replaced similar prior insurance written by a company other than us, and such other insurance provided a period of time to discover loss occurring prior to the termination or cancellation of that coverage, then, the OTHER INSURANCE General Condition is amended by adding the following:

3. If a loss is discovered within the period provided by prior insurance to discover losses, we will not pay for such loss unless the amount exceeds the Limit of Insurance under your prior Policy. We will then only pay you for any excess loss subject to the Insuring Agreements, Exclusions and General Conditions of this Policy.

4. Any payment that we make to you under this insurance shall not exceed the difference between the amount of insurance under your prior Policy and the Limit of Insurance shown in the Declarations and we will not apply our Deductible Amount to any excess loss payment.

© 1998, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMEND GENERAL CONDITION J. 4. -
# EMPLOYEE BENEFIT PLANS

This endorsement applies to the CrimeSHIELD Policy for Mercantile Entities.

**PROVISIONS**

SECTION VI. GENERAL CONDITIONS, J. 4. EMPLOYEE BENEFIT PLANS, is hereby deleted in its entirety and replaced with the following:

4.  This Policy insures any Employee Welfare or Pension Benefit Plan which is sponsored by one or more of the Named Insureds for loss through fraud or dishonesty as defined in Section 2580.412-9 of the Employee Retirement Income Security Act (ERISA) as amended.  For those plans which are specifically named as additional insureds in the Declarations or on any attached Schedule, the maximum Limit of Insurance is the amount shown on the Declarations under Item 4., Coverages, Limits of Insurance and Deductibles, Insuring Agreements Forming Part of This Policy, 1.  Employee Theft.  For any Plan not specifically named as an Insured, this Policy is deemed to be in compliance with, and satisfy the bonding requirements of Section 2580.412-11 of ERISA.  For such unnamed Plans, this insurance provides a Limit of Insurance for each Plan which is the lessor of:

    (a)  $500,000; or
    (b)  10% of the amount of the funds handled; or
    (c)  The Limit of Insurance shown on the Declarations under Item 4., Coverages, Limits of Insurance and Deductibles, Insuring Agreements Forming Part of This Policy, 1. Employee Theft.

The minimum Limit of Insurance for any Plan shall be $1,000.  In no event shall coverage for any Plan, whether specifically named as an additional insured or not, be more than the Limit of Insurance shown on the Declarations under Item 4., Coverages, Limits of Insurance and Deductibles, Insuring Agreements Forming Part of This Policy, 1. Employee Theft.

The Limit of Insurance available for any Plan loss will be determined to equal the amount required under ERISA at the time you discover a loss, subject to the foregoing limitations.

©2001 The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUDE SPECIFIED PROPERTY

This endorsement applies to the Insuring Agreements designated below:

| INSURING AGREEMENT | | TITLE |
|---|---|---|
| ☒ | 1 | EMPLOYEE THEFT |
| ☒ | 3 | THEFT, DISAPPEARANCE AND DESTRUCTION -<br>MONEY, SECURITIES AND OTHER PROPERTY |
| ☒ | 4 | ROBBERY AND SAFE BURGLARY -<br>MONEY AND SECURITIES |
| ☒ | 5 | COMPUTER FRAUD |

A.  SCHEDULE*
   Property Not Covered

   All funds owned by, or held on behalf of, the MTA's group self-insurance fund

B.  PROVISIONS
   Coverage for loss does not include the property shown in the SCHEDULE.

   *Information required to complete this SCHEDULE, if not shown on this endorsement, will be shown in the
   Declarations.

Endorsement 184A                                                    Page 1 of 1

© 2001, The Hartford

First Class Mail

LAW OFFICES
STROBL & SHARP
PROFESSIONAL CORPORATION
300 EAST LONG LAKE ROAD, SUITE 200
BLOOMFIELD HILLS, MICHIGAN 48304-2376

The Hartford Fire Insurance Company
c/o CSC-Lawyers Incorporating Service Co.
601 Abbott Road
East Lansing MI 48823

(11/04)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Tooling, Manufacturing & Technologies Association

### DEFENDANTS
The Hartford Fire Insurance Company

**(b)** County of Residence Of First Listed Plaintiff    Wayne
(EXCEPT IN U.S. PLAINTIFF CASES)

County Of Residence Of First Listed Defendant    Hartford County, CT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address and Telephone Number)
Elainne A. Parson (P34493) Krista A. Jackson (P66303)
Strobl & Sharp, P.C.
300 E. Long Lake Rd., Ste. 200, Bloomfield Hills, MI 48304
248.540.2300

Attorneys (If Known)
James C. Case(P31583)  Jason C. Yert (P67144)
Kerr, Russell and Weber, PLC
500 Woodward, #2500, Detroit, MI 48226
313.961.0200

## II. BASIS OF JURISDICTION (Place An "X" In One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☒ 4 Diversity (Indicate Citizenship of Parties in item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place An "X" In One Box For Plaintiff and One Box For Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place An "X" In One Box Only)

### CONTRACT
☒ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☐ 195 Contract Product Liability
☐ 196 Franchise

### TORTS
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury

**PERSONAL INJURY**
☐ 362 Personal Injury— Med. Malpractice
☐ 365 Personal Injury— Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

### FORFEITURE/PENALTY
☐ 610 ...
☐ 620 ...
☐ 625 ...
☐ 630 ...
☐ 640 ...
☐ 650 ...
☐ 660 ...
☐ 690 Other

Case: 4:08-cv-11812
Judge: Gadola, Paul V
MJ: Whalen, R. Steven
Filed: 04-29-2008 At 02:08 PM
REM TOOLING, MANUFACTURING & TECHNOLOGIES ASSOC. V. HARTFORD (TAM)

### BANKRUPTCY
☐ 840 Patent
☐ 840 Trademark

### LABOR
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt. Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

### SOCIAL SECURITY
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS -- Third Party 26 USC 7609

### OTHER STATUTES
☐ 400 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900 Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

### REAL PROPERTY
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

### CIVIL RIGHTS
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

### PRISONER PETITIONS
☐ 510 Motions to Vacate Sentence
**Habeas Corpus**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

## V. ORIGIN (Place An "X" In One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite The US Civil Statute under which you are filing (Do Not Cite Jurisdictional Statues Unless Diversity):
28 USC 1441; 28 USC 1332
Brief description of cause: Breach of contract

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ excess of $75,000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ YES   ☐ NO

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE    Hon. Mark A. Goldsmith
DOCKET NUMBER    07-811020-CZ

DATE
April 28, 2008

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

PURSUANT TO LOCAL RULE 83.11

1.   Is this a case that has been previously dismissed?

☐ Yes

☒ No

If yes, give the following information:

Court: _____

Case No.: _____

Judge: _____

2.   Other than stated above, are there any pending or previously discontinued or dismissed companion cases in this or any other court, including state court? (Companion cases are matters in which it appears substantially similar evidence will be offered or the same or related parties are present and the cases arise out of the same transaction or occurrence.)

☒ Yes

☐ No

If yes, give the following information:

Court:   Oakland County Circuit Court

Case No.:   07-081120-CZ

Judge:   Mark A. Goldsmith

Notes: _____