UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOOLING, MANUFACTURING &
TECHNOLOGIES ASSOCIATION,
a Michigan non-profit trade association,

  Plaintiffs,

v.

THE HARTFORD FIRE INSURANCE
COMPANY, a Connecticut insurance
company,

  Defendant/Third Party Plaintiff,

v.

MARK TYLER; TEAM MARKETING
GROUP, INC.; TEAM MARKETING
GROUP, INC. d/b/a TYLER
CONSTRUCTION, INC.; TEAM
MARKETING GROUP, INC. d/b/a TEAM
BENEFITS GROUP, INC.; TEAM
MARKETING GROUP, INC., d/b/a ALLIED
RISK, INC.; MARK TYLER &
ASSOCIATES,

  Third Party Defendants.

Hon. Paul V. Gadola
Civil Action No. 4:08 cv 11812
Lower Court Case No. 2008-090595-CK

| STROBL & SHARP, P.C. | KERR, RUSSELL AND WEBER, PLC |
|---|---|
| ELAINE A. PARSON (P34493) | JAMES R. CASE (P31583) |
| KRISTA A. JACKSON (P66303) | JASON C. YERT (P67144) |
| Attorneys for Plaintiff | Attorneys for Defendant/ Third-Party Plaintiff |
| 300 East Long Lake Road, Suite 200 | 500 Woodward Avenue, Suite 2500 |
| Bloomfield Hills, MI 48304-2376 | Detroit MI 48226 |
| (248) 540-2300 | (313) 961-0200 |
| eparson@stroblpc.com | |

**A civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has been previously filed in Oakland County Circuit Court. The action remains pending. The docket and the judge assigned to the action are: Docket No. 07-081120-CZ, Judge Mark A. Goldsmith.**

## FIRST AMENDED COMPLAINT AND JURY DEMAND

PLAINTIFF Tooling, Manufacturing & Technologies Association, by and through its attorneys Strobl & Sharp, P.C., states as follows for its First Amended Complaint against Defendant Hartford Fire Insurance Company.

## JURISDICTION AND VENUE

1.  Plaintiff, Tooling, Manufacturing & Technologies Association ("TMTA"), is a Michigan non-profit trade association, with its principal place of business in Oakland County, Michigan, and which conducts business in Oakland County, Michigan. TMTA was formerly known as the Michigan Tooling Association ("MTA").

2.  Defendant Hartford Fire Insurance Company (the "Hartford") is a Connecticut insurance company with its principal place of business in Hartford, Connecticut.

3.  At all times relevant hereto, the Hartford provided TMTA with insurance coverage in Oakland County, Michigan, pursuant to that certain CrimeShield Policy for Mercantile Entities, Policy No. 353DDCM1571 (the "Policy"). A copy of the Policy is appended hereto as Exhibit A.

4.  The Policy is dated September 16, 2003 and provides coverage for, among other things, employee theft in the amount of Three Hundred Thousand Dollars ($300,000.00).

5.  Plaintiffs seek damages in excess of $25,000 and this matter is otherwise within the Court's jurisdiction.

6.  Venue is proper in the Oakland County Circuit Court, State of Michigan.

## **FACTUAL ALLEGATIONS**

7. Plaintiff hereby incorporates by reference and realleges Paragraphs 1 through 6 as through fully set forth herein.

8. Under the Policy, the Hartford has insured MTA for $300,000 for loss based on employee theft, and/or depositors forgery or alteration, and/or computer and funds transfer fraud.

9. The Policy also provides $50,000 coverage for theft, disappearance or destruction of property.

10. All premiums were paid and current, and the Policy was in full force and effect from September 16, 2003 to the present.

11. Pursuant to Paragraph I of the Policy, the Hartford is required to "pay for loss which [TMTA] sustain[s] resulting directly from acts committed or events occurring at any time and discovered by [TMTA] during the Policy Period shown in the Declarations or during the period of time provided in General Condition L., EXTENDED PERIOD TO DISCOVER LOSS."

12. As of the date this Complaint was filed, the Policy is still in effect and has not been cancelled or terminated.

13. Section II. Insurance Agreements, Paragraph A. of the Policy, Insuring Agreement I, Employee Theft, provides:

> we will pay for loss or damage to "money", "securities" and "other property" which results directly from "theft" by an "employee", whether or not identifiable, while acting alone or in collusion with other persons.

14. In addition, the Policy also provides coverage for forgery or alteration of, inter alia:

3

>orders or directions to pay a sum certain in money, theft, disappearance and destruction of property, both inside or outside of the insured's premises, robbery and burglary, computer and funds transfer fraud, and loss from good faith acceptance of money orders and counterfeit currency.

And the Policy covers additional losses.

15. "Theft" is defined by the Policy as the "unlawful taking of 'money,' 'securities' or 'other property' to the deprivation of the Insured."

16. Mark Tyler ("Tyler"), at all relevant times, was an "employee" or recently was an employee of TMTA as defined by the Policy.

17. Tyler is, and at all relevant times has been, a licensed insurance agent holding appointments with various insurance companies to sell accident and health, life, and property & casualty insurance.

18. From about September 5, 2000 until at least February 23, 2007, Tyler was employed by TMTA to sell insurance to TMTA members and to act as the General Manager of the MTA Insurance Agency, LLC, now known as the TMTA Insurance Agency, LLC (the "Agency").

19. TMTA is the sole member of the Agency, manages the Agency through TMTA's employees, and formed the Agency in order to maintain and further benefit TMTA's insurance business, which is conducted for the benefit of TMTA's members.

20. In the course of his employment by TMTA, Tyler acted as General Manager of the Agency, and assumed full responsibility for TMTA's insurance business.

21. In the course of Tyler's employment, Tyler sold life, health, disability and accident insurance, and possibly P&C insurance (collectively the "Insurance") to TMTA's members: The insurers paid commissions and bonuses to TMTA resulting from

4

Insurance sales to TMTA members.

22. TMTA paid Tyler a salary, and bonuses based upon the amount of Insurance commissions Tyler brought to TMTA. TMTA also provided to Tyler additional benefits such as vacation pay and 401(k) eligibility. Each year TMTA issued its W-2 forms reflecting compensation TMTA paid to Tyler.

23. All commissions and bonuses paid as a result of Insurance sales by Tyler to TMTA members were to be paid to TMTA: As the employee of TMTA, Tyler had a duty to disclose to TMTA all commissions and bonus payments which resulted, or could have resulted, from sales of the Insurance, and to ensure that all commissions generated as a result of his sales of Insurance were paid to TMTA.

24. Without the knowledge of TMTA, Tyler incorporated and/or maintained several separate insurance entities and/or agencies while still employed by TMTA. Specifically:

  a. On February 19, 1993, Tyler incorporated Allied Risk, Inc. (On June 12, 1995, Allied Risk, Inc. changed its name to Team Marketing Group, Inc.)

  b. Team Marketing Group, Inc. registered the assumed names of Allied Risk, Inc., Team Benefits Group, Inc. and Tyler Construction, Inc.

  c. On September 18, 2006, Tyler incorporated Mark Tyler & Associates, Inc.

25. While an employee of TMTA, and without TMTA's knowledge or consent, Tyler serviced and sold Insurance to TMTA members (and possibly others) and caused all or portions of the commissions and bonuses that should have gone to TMTA to be paid directly to himself and/or his entities.

26. Tyler resigned on February 23, 2007 and when Tyler left the TMTA

premises, he took all computer stored, and most hard copy, insurance information with him.

27. Thus, on February 27, 2007, TMTA filed suit against Tyler in Oakland County Circuit Court (Case No. 07-081120- CZ) ("Tyler Litigation"), focusing its case on the theft of insurance records and trade secrets.

28. During the early part of the discovery phase of the Tyler Litigation, TMTA subpoenaed records concerning Tyler's activities from the insurers who had appointed TMTA, including Blue Cross/Blue Shield.

29. The subpoenaed records which were produced included references to commissions being "reassigned" to Tyler from TMTA.

30. At that time, TMTA had no knowledge of any commissions being "reassigned" to Tyler.

31. After further discovery, TMTA identified significant commissions paid directly to Tyler and Tyler entities resulting from Tyler's sales of Insurance to TMTA members.

32. On July 23, 2007, TMTA filed its Proof of Loss with the Hartford, referencing the converted commissions and bonuses.

33. After specific discovery of the amounts wrongfully taken by Tyler and his entities, TMTA amended its complaint to add causes of action for Conversion and Fraud on September 9, 2007.

34. On September 25, 2007, TMTA provided the Hartford with follow-up information, in response to a request by the Hartford.

35. TMTA has cooperated fully in the Hartford's investigation into this matter,

6

including notification of local police authorities of Tyler's actions.

36. On November 6, 2007, TMTA demanded that the Hartford make a determination as to whether it would cover TMTA's losses with respect to the theft by Tyler.

37. To date, the Hartford has not made a determination regarding coverage.

## COUNT I
## DECLARATORY JUDGMENT

38. Plaintiff hereby incorporates by reference and realleges Paragraphs 1 through 37 as through fully set forth herein.

39. As a result of entering into the Policy with TMTA, the Hartford owed TMTA the duties to act fairly and reasonably in investigating TMTA's claim, to act in good faith and to timely confirm coverage to TMTA and timely pay TMTA's claim.

40. The Hartford, though its agents, representatives, and employees, failed to act fairly and reasonably in investigating TMTA's claims, failed to act in good faith in acknowledging coverage, and failed to timely pay TMTA's claim.

41. The Hartford's wrongful conduct includes the Hartford's failure to timely determine that coverage was appropriate, to timely involve itself in the ongoing settlement discussions between TMTA and Tyler and his entities, and to timely pay TMTA's claim.

42. The Hartford has also engaged in unfair or deceptive actions or practices in the business of insurance, by failing to comply with MCL § 500.2026 and 2254 by:

    a. Failing to acknowledge promptly or to act reasonably and promptly upon communications with respect to claims arising under insurance policies;

      b. Failing to adopt or implement reasonable standards for prompt investigation of claims arising under insurance policies; and

      c. Failing to affirm or deny coverage within a reasonable time after proof of loss statements have been completed.

      d. Failing to timely, finally pass upon TMTA's claim submitted to it within 6 months from submission of TMTA's proof of loss.

43. These actions by the Hartford constitute a breach of TMTA's insurance contract with the Hartford.

44. As a direct and proximate result of this breach of contract, TMTA has been damaged.

WHEREFORE, TMTA respectfully asks that this court enter an Order declaring that Defendant Hartford Fire Insurance Company must provide coverage and payment to TMTA under the Policy and award all other relief deemed just and equitable.

## COUNT II
## BREACH OF CONTRACT

45. Plaintiff hereby incorporates by reference and realleges Paragraphs 1 through 44 as through fully set forth herein.

46. In addition, the Hartford's actions and omissions and failure to act, as described above, constitutes a breach of its duties under the Policy, a breach of its contract with TMTA, and a breach of its statutory duties, which entitles TMTA to contract damages, statutory damages, and interest.

47. Moreover, the Hartford breached the Policy *inter alia* by failing to timely involve itself in the earlier settlement discussions between TMTA and Tyler and his

entities, and failing to timely acknowledge and pay TMTA's claim, without justification.

48. The Hartford's refusal and delay in agreeing to involve itself in settlement discussions, despite its receipt of information sufficient to demonstrate TMTA's right to Policy proceeds, caused TMTA to lose a potential opportunity to settle the underlying issues.

49. The Hartford's delay and refusal to acknowledge coverage was done in bad faith, and caused TMTA to expend attorneys' fees and other costs.

50. MCL 500.2006 provides that penalty interest may be assessed against an insurer who fails to pay an insured on a timely basis.

51. TMTA has suffered the loss of at least $738,441.65, and substantial economic damages, as a direct and proximate result of the Hartford's breach of contract, and is entitled to penalty interest and exemplary damages for the Hartford's breach of contract and bad faith.

WHEREFORE, Plaintiff requests that this Court enter a judgment in its favor against Defendant for the full extent of its damages, plus interest, costs and attorney fees and such other relief as the Court may deem just and appropriate.

                                                Respectfully submitted,
Strobl & Sharp, P.C.

 /s/  *Elaine A. Parson*
Elaine A. Parson (P34493)
Krista A. Jackson (P66303)
Attorneys for Plaintiff
300 East Long Lake Road, Suite 200
Bloomfield Hills MI 48304-2376
(248) 540-2300  Fax (248) 205-2788
eparson@stroblpc.com

Dated: May 19, 2008

9

## **JURY DEMAND**

NOW COMES Plaintiff, Tooling, Manufacturing & Technologies Association, by and through its attorneys, Strobl & Sharp, PC, and hereby demand trial by jury of all matters pending in this action.

Respectfully submitted,
Strobl & Sharp, P.C.

 /s/   *Elaine A. Parson*
Elaine A. Parson (P34493)
Krista A. Jackson (P66303)
Attorneys for Plaintiff
300 East Long Lake Road, Suite 200
Bloomfield Hills MI 48304-2376
(248) 540-2300  Fax (248) 205-2788
eparson@stroblpc.com

Dated: May 19, 2008

J:\DOCS\82008\016\PLDG\SB238418.DOC

---

ECF Certificate of Service

I hereby certify that on May 19, 2008, I did electronically file the foregoing document with the Clerk of the Court using the ECF System which will send notification of such filing to all attorneys of record, and I hereby certify that I have mailed the foregoing document to the non-ECF participants via United States Mail.

 /s/  *Karen Williams*
Karen Williams